UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CAREY HARDEN-BEY,

    Plaintiff,

v.                                              Case No. 2:06-cv-7
                                                  HON. R. ALLAN EDGAR

B. HOBSON, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Carey Harden-Bey, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Hearing Investigator B. Hobson, Hearing Officer G. Heisler, Retired Assistant Deputy Warden R. Bobo, Warden D. Bergh, Regional Prison Administrator J. MacMeekin, and Deputy Director D. Straub, and Inspector L. Rutter. Plaintiff's complaint was initially dismissed by the court on February 17, 2006. In Plaintiff's original complaint, he asserted that his confinement in administrative segregation violated his due process, equal protection and Eighth Amendment rights. Plaintiff appealed the dismissal to the Sixth Circuit Court of Appeals. On May 12, 2008, the Sixth Circuit reversed and remanded the dismissal with regard to Plaintiff's due process claim only. However, Plaintiff was allowed to amend his complaint, which he did on November 19, 2008, in which he set forth conspiracy, equal protection, retaliation, due process and deliberate indifference claims. On October 16, 2008, the court reviewed Plaintiff's amended complaint and dismissed Plaintiff's conspiracy, equal protection and retaliation claims and ordered service with regard to his

due process and Eighth Amendment claims regarding the seizure of his medical supplies (docket #35 and #36).

Plaintiff alleges that on September 18, 2002, he was placed in administrative segregation based on information from an illegal Notice of Intent (NOI) created by Defendant Rutter. Plaintiff requested a hearing, an investigation, and all relevant documents and witnesses. On September 18, 2002, the reviewing officer failed to provide Plaintiff with any of the documents or witness statements.

On September 23, 2002, Plaintiff was taken before Hearing Officer L. Maki, and the complete hearing packet was read, except for one section, which was marked confidential. Hearing Officer Maki ordered that some of the "confidential" information be released to Plaintiff, so that he could defend himself. Maki stated:

> Prisoner did not waive time limit, Prisoner is correct: the NOI fails to outline facts of the alleged behavior. The sufficient information should be released to prisoner to enable him to defend against the factual allegations that may be used to establish that he is a serious threat to the physical safety of the facility. Prisoner must be given 24 hours written notice of these facts and have an opportunity for a [sic] investigation.

Plaintiff states that Defendant Rutter and Hobson failed to release this information to Plaintiff. On September 25, 2002, Defendant Heisler conducted an unfair hearing in which he failed to adhere to standard hearing procedures. Plaintiff was subsequently reclassified to administrative segregation by Defendant Bobo.

Plaintiff also alleges that on September 18, 2002, his ankle braces were confiscated, causing Plaintiff to have unstable lateral bipedal movement. On November 12, 2002, Plaintiff lost his balance and struck and injured his left arm and shoulder. Plaintiff further claims that on July 17, 2004, his orthopedic boots were confiscated, which caused a number of injuries, including pain and

partial paralysis of his left foot and leg, severe pain in his thoracic and lumbar spine, and irreversible deformity of Plaintiff's left leg. Plaintiff is suing Defendants in their individual and official capacities and is seeking compensatory and punitive damages, as well as declaratory and injunctive relief.

Presently before the Court is Defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56 (docket #62). Plaintiff has filed a response, Defendants have filed a reply, and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed

to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants state that Plaintiff's Eighth Amendment claims regarding the confiscation of his ankle braces in 2002 and the orthopedic boots in 2004 is barred by the statute of limitations. Plaintiff asserted this claim for the first time in his amended complaint, which was filed on October 16, 2008. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

Defendants contend that this claim does not relate back to Plaintiff's original complaint because it does not relate to any of the claims asserted in Plaintiff's original complaint. Pursuant to Fed. R. Civ. P. 15(c)(1)(B), an amendment to an original pleading relates back to the date of the original pleading when the amendment asserts a claim that arose out of the conduct,

---

[1] 28 U.S.C. § 658 created a "catch-all" limitations period of four years for civil actions arising under federal statute enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

transaction or occurrence set out, or attempted to be set out, in the original pleading. A review of Plaintiff's original complaint reveals that the only asserted misconduct was in relation to his continued confinement in administrative segregation. Therefore, it does not appear that Plaintiff's claims regarding medical equipment relate back to the original complaint. As noted above, Plaintiff claims that his ankle braces were confiscated in 2002 and his orthopedic boots were confiscated in 2004. Plaintiff's motion to file an amended complaint is dated July 15, 2008, and the motion was granted on October 16, 2008. Therefore, more than three years had elapsed between the alleged misconduct and the assertion of Plaintiff's claims in this court. Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's Eighth Amendment claims.

Defendants also claim that they were not personally involved with the confiscation of Plaintiff's medical supplies. Defendants state that they are not medical professionals and were not responsible for the decision to discontinue Plaintiff's ankle braces and orthopedic boots. In support of this assertion, Defendants attach a copy of Plaintiff's medical records. (Defendants' Exhibit R.) A review of the records reveals that on June 25, 2004, Dr. Badawi Abdellatif examined Plaintiff, found no disability in Plaintiff's feet or ankles, and discontinued the orthopedic boot detail. (*Id.* at p. 5.) As noted by Defendants, there is no indication in the record of any direct involvement in the discontinuation of Plaintiff's medical supplies by the named Defendants.

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or

otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants were personally involved in the activity which forms the basis of Plaintiff's Eighth Amendment claim. Defendants' only roles in the confiscation of Plaintiff's medical supplies involve the denial of administrative grievances or the failure to act. Defendants cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims for lack of personal involvement.

Moreover, Defendants state that Plaintiff did not have a special accommodation for either ankle braces or orthopedic shoes. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). As noted above, Plaintiff's medical record shows that on June 25, 2004, Dr. Badawi Abdellatif examined Plaintiff and found no disability in his feet or ankles, and discontinued the orthopedic boot detail. (Defendants' Exhibit R.) In addition, the step I response to Plaintiff's grievance regarding his orthopedic boots supports this finding. (Defendants' Exhibit L, Grievance No. LMF 04-07-191412d3.) Because Plaintiff has failed to come forward with any evidence that he had a serious medical need for the ankle braces or the shoes, the denial of these items could not violate the Eighth Amendment.

Defendants assert that they are entitled to summary judgment on Plaintiff's due process claims because his confinement in administrative segregation did not implicate a liberty

interest and because Plaintiff received due process. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Although plaintiff states that his placement in segregation has been "atypical and significant," he merely uses the legal jargon and presents no factual allegations to support his conclusion. The only allegation he presents regarding his segregation is that its duration has been for more than one year. The length of the placement is not determinative. *See Jones*, 155 F.3d at 812. Plaintiff has failed to make any allegations which that his segregation is "atypical and significant." Consequently, the court concludes that no liberty interest is implicated by his placement.

The United States Supreme Court recently addressed this issue in *Wilkinson v. Austin*, 545 U.S. 209 (2005). In *Wilkinson v. Austin*, the Court found that the plaintiff had a liberty interest in avoiding assignment in Ohio's supermax prison because it involved the deprivation of almost all human contact, even to the point that conversation is not permitted between cells. In addition, the

light is on for 24 hours, although it may be dimmed, exercise is for one hour per day, but only in a small indoor room, and review of such placement occurs annually after the initial 30-day review. Finally, the Supreme Court noted that in Ohio, such a placement disqualifies an otherwise eligible inmate for parole consideration. *Id.* 545 U.S. at 223-224.

However, the Supreme Court in *Wilkinson v. Austin* made it clear that the determination of whether an inmate has a liberty interest in avoiding a particular condition of confinement or a particular institutional placement continues to be governed by *Sandin v. Conner*, 515 U.S. 472 (1995), and that such interests will generally be limited to:

> freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 484. In *Wilkinson v. Austin*, the Supreme Court went on to find that Ohio's informal, nonadversary procedures for placement in the supermax prison were adequate to safeguard Plaintiff's liberty interest. *Wilkinson v. Austin*, 125 S. Ct. at 2397.

In their brief, Defendants state that Plaintiff is a level V inmate, with a history of escape, and is serving 40 to 60 years for armed robbery and murder. Plaintiff's earliest release date is April 30, 2026. Plaintiff arrived at LMF on July 19, 2002. Within months of his arrival, reports surfaced from prisoners and staff that Plaintiff was abusing his position as a ranking member in the Moorish Science Temple of America to "direct and influence his followers to strong arm other prisoners, collect debts, approve prisoner assaults and is involved in the approval and planning of a major serious assault on staff and takeover of the housing unit and/or facility here at LMF." (Defendants' Exhibit D, September 18, 2002, Notice of Intent.) Plaintiff received two hearings on the matter. On September 23, Hearing Officer Maki determined that Plaintiff had not been provided

with sufficient information that would enable him to defend against the allegations. In addition, Plaintiff was told that all attached reports, other than one, were confidential. The one report was read to Plaintiff since it was not clear, based on the other reports marked confidential, if some of the information should be marked confidential or not. Plaintiff submitted a statement, which was accepted and read. (Defendants' Exhibit E, Segregation September 23, 2002, Classification Hearing Report.) The hearing was adjourned until September 25, 2002, in order to give Plaintiff a chance to review the facts and investigate. At the second hearing, Plaintiff was presented with the evidence against him, which consisted of a two page memorandum from Sergeant Harris, a statement from Officer Peterson, two Hearing Investigators' reports, eight pages of confidential information from other prisoners, a three page written statement from Plaintiff, and questions submitted by Plaintiff. At the conclusion of the hearing, Plaintiff was found to be a serious threat to the physical safety of staff and other prisoners. (Defendants' Exhibit F, September 25, 2002 Hearing Report.)

Plaintiff remained in segregation for the next five years, during which staff periodically reviewed Plaintiff's segregation status to decide whether it should continue. Plaintiff was interviewed a total of 76 times, weekly for the first two months, and then monthly until his eventual release to general population on April 8, 2008. After being in segregation for 30 consecutive days, Deputy Warden Bergh approved Plaintiff's continuance in segregation. (Defendants' Exhibit I.) After each interview, Plaintiff was instructed that in order to be released from segregation, he was to exhibit good behavior and remain misconduct free. However, Plaintiff received misconduct tickets on December 13, 2002, February 25, 2003, April 27, 2003, July 23, 2003, August 12, 2003, May 7, 2004, February 9, 2005, November 20, 2005, February 24, 2006, and November 9, 2006. (Defendants' Exhibit J.) In addition, the decision to release a prisoner from administrative segregation remains within the discretion of the Security Classification Committee

(SCC), which reviews each interview and decides whether or not to continue the segregation. After each interview, the SCC determined that Plaintiff posed a serious threat and recommended continuation in administrative segregation. (Defendants' Exhibit D.)

The court notes that given the length of Plaintiff's confinement in administrative segregation and the conditions associated with this confinement, it appears that such confinement may constitute an atypical and significant hardship. However, even if Plaintiff's incarceration in segregation is deemed to be atypical and significant, the consequence would merely be to entitle him to a periodic due process review of his segregation status. Applying *Hewitt v. Helms*, 459 U.S. 460 (1983), and based on the evidence presented by Defendants, the undersigned finds that Plaintiff's original placement and continuation in segregation was well-supported and, therefore, met due process standards. Plaintiff does not dispute that following his classification to administrative segregation, he incurred numerous major misconducts, or that he received monthly reviews of his classification. Given Plaintiff's record, he presented a threat to prison staff. The fact that Plaintiff disagrees with the reasoning and recommendations of the SCC does not render the periodic reviews constitutionally deficient. Accordingly, the undersigned concludes that Plaintiff has received more than adequate procedural due process.

Defendants assert that they are entitled to dismissal of Plaintiff's official capacity claims pursuant to the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State

or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[2] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Finally, Defendants claim that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly

---

[2] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' motion for summary judgment (Docket #62) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                 /s/ Timothy P. Greeley
                                 TIMOTHY P. GREELEY
                                 UNITED STATES MAGISTRATE JUDGE

Dated:   August 19, 2009